Good morning, Your Honors. Marilyn Bednarski on behalf of Petitioner Mr. Robert Lewis Tolbert. It's our position that the detective in this case intentionally intruded into an attorney-client privilege communication. And it was the use of that communication that implicated the Sixth Amendment's exclusion principle. Had the district attorney not used the communication, not admitted it into evidence, not argued it, we wouldn't be here. There wouldn't be a complaint. The Supreme Court established in Weatherby v. Bercy that when confidential communications are overheard, the constitutionality of a conviction depends on the use of it, whether it's direct or indirect. The focus, therefore, is on the use, not the subjective intent of the officer. In Weatherford, there wasn't a problem because the government didn't use the conversations. That involved an undercover informant in the defense camp. Similarly, in a case called Irwin, the government's failure to use a communication that was privileged didn't implicate the Sixth Amendment because it wasn't used. How did California deal with the privilege issue? The state court, the trial court, found that the client, the Petitioner, Mr. Tolbert, had waived it in the state court's view by not exercising minimal precautions to maintain its privilege major. Waived what? The state court attorney-client privilege? Right. It was provided by statute consistent with the Sixth Amendment. So we start from the proposition that the trial court, dealing with the statutory provision under California law, concluded there had been a waiver by the facts that you understand in this case. Right. On appeal, what happened? On appeal, the appellate court, interpreting California decisions and not interpreting constitutional, I mean, Supreme Court decisions, upheld the waiver, found that the client had waived it, and also found that he wasn't prejudiced. We contested. We have to disagree with California's application of its own state law in order to allow you to prevail, don't we? That's right. How do we do that with the standard of review that's so deferential now? Absolutely. We talked about unreasonable applications of Federal law as determined by the United States Supreme Court. Here we have an underlying determination that involves state law, waiver of the privilege. Well, the — it's our position that there's no deference to the state court finding of facts when it's an unreasonable application  In other words — and let me just take one step back. I believe that both provisions of 2254d compel a reversal in this case, both that it was an unreasonable application. Contrary to and unreasonable. Right. One of the reasons why it's contrary to Supreme Court precedent is because the state court read into its inheritance and decision that it read into the decision a surreptitiousness requirement. There is no surreptitiousness requirement. In other words, if the detective's intrusion was purposeful, and it's been briefed in our brief of why it's purposeful, and I'll come back to those facts, it didn't have to be underhanded. It didn't have to be sneaky. Although I think there are facts in the record that would suggest that there was some surreptitiousness. He waited until the lawyer had moved away. He stood. He could not have read it from his seated position. He had to stand and look over. And then he had to not only read the first line, but read past it. And it was clear from the first line that it was highly incriminatory because the first line itself said the jacket is not. And this came in the context of a witness just having testified that they had obtained the jacket from Mr. Tolbert. They had asked him what he was wearing that night. They had told him that the man had been shot and that the car had been lit on fire. It was clear that they were looking for clothing, and they had told him they were going to test it. So in the context of that witness, this statement was highly incriminatory, and it was obvious on its face. The standard is purposeful, not surreptitious. And there's a big difference between some kind of underhanded intent and a purposeful action. And one of the problems with the report and recommendation that was adopted by the district court and is now the subject of our appeal is that it's clear that a surreptitious element, so to speak, has been added to the standard. There's a case out of Utah called Lin-Lin Trading, which is obviously not binding, but this was one where a client had crossed the border, his pad of paper was seized. The pad of paper was very clearly attorney notes. The evidence in the record was clear that it was notes between the client and the attorney, and they were talking about how to handle a legal matter involving, I don't remember if it was money laundering or some sort of importation. But in that case, the pad was seized. The violation of counsel was presumed. The prejudice is presumed merely by the seizure of the pad of paper. They didn't use it. But the question in that case, the officer's conduct was open. It was a customs officer right at the border. There was no surreptitious quality about it. And in our case, when the detective stood up and looked over, and it's our point of view that it's the intent of the client that really matters, not the intent of the officer. And so the state court seemed to really focus in its factual findings on that the officer wasn't doing anything improper. He just stood up. He read it. That's his job. He's in the courtroom. In other words, he continued detecting. Our point of view is that it's the client's privilege, it was the client's right to hold it or waive it. And the client did at least minimal precautions. And it's our position that what he did was reasonable. The standard is, did he exercise reasonable precautions to keep the nature private? And the facts there are very clear. This was a client who was shackled and in custody. Did he ever bring an argument of ineffective assistance of counsel? We're leaving it there. I don't recall in his early petitions if he did. But I just don't quite get the theory here. I'm sorry. There was no alternative for him. Because of the nature of the courtroom, because it was so tiny and the two tables were placed together. It wasn't admitted in the course of that trial, was it? Not the first trial, but the first trial ended for an unrelated reason. I understand. And then, because the DA had given notice that it wanted to use the note, the lawyer, of course, had objected immediately that it was a privileged communication and that in no way should it be used, and that he had instructed his client to write. When was that? Which trial was that? Immediately. Immediately. Immediately upon, in the first trial, the detective discovered the note, read the note, and it was preserved at that time. It was right out in the open. Yeah. Well, it was lying on the table, wasn't it? You know, I think that's an unfair characterization in the sense that the client had to stay in that seat. He was shackled in custody. That's where he wrote his notes. His lawyer had told him, write to me, because that's what he always told his clients, but also because of the nature of the courtroom. Well, you have an underlying problem also. Findings of fact must be given deference unless, you know, they're Geronians, and here you have findings of fact regarding waiver. It was left in plain view in a public place. Anyone could have observed it. The bailiff could have seen it. The newspaper reporter could have seen it. No attempt to conceal it. It was a communication made in the presence of third parties, and it was an inadvertent act on Joseph's part. So we have to start from the proposition that these are the facts of the situation, unless you can demonstrate somehow under AEDPA that these facts are entitled to no deference. Well, my position would be that in light of the facts that the finding of waiver was unreasonable, given the totality of the facts, there shouldn't be deference to those facts. Well, that's a real tough road to travel. We have to presume them correct. Unless you can rebut that by clear and convincing evidence. And I believe the evidence is clear and convincing, not only because this happened several days into the trial, and thereby the client's expectation would have been validated that the process that was being used, that he was following his lawyer's instructions, writing things down. My expectation was that it wouldn't get used in that trial, and it didn't. I think his expectation was that it wouldn't be discovered. And I think the lawyer's expectation would be that it wouldn't be used. But the client seems to have followed the instructions exactly, and it had been working. I mean, he had never, during the course of the day, nothing had ever been discovered. At the end of the day, he gave his pad to his lawyer. It wasn't as if it was left in a public place where people passed by, or in a place that was not exactly where he had to remain, and the pad was exactly where it was all the time in the trial. He could have covered it. He could have covered it. I mean, there are other things that could have been done. But in light of, and I think that had it been the end of the day when he left, or people, he was out of the custody of his pad, a better argument could be made that he should have had to have done something more. But at the end of the day, he gave his pad to his lawyer. And this day wasn't over. The lawyer was still in the courtroom. Did the prosecutor see it? The detective informed, oh, it was at a break at the end of the day. The lawyers were still in the courtroom. His defense lawyer had left the table and was standing, it was a very small courtroom, so just nearby, talking to the DA. The client was still shackled and in custody at his table with his pad right in front of him. The detective, who was seated at the next table over, which the evidence in the record is the detective's seat, which was on the inside corner of the prosecution's table, was no more than two to three feet from the lawyer's seat on the inside corner of the lawyer's table. He should have been careful. He couldn't see it from a seated position, though. He had to stand and look over. That's what police do. You know, I'll tell you a little story. I don't know if this is true, but it's about Judge Trott, who was a top prosecutor, all right? So he used to sit there. You can put it on my credit card. He used to sit there and take his notes in French, and he'd leave them out there for all the lawyers to read. Is that right? Yeah. Yeah. But he took them in French. Well, you just saw me tear up a note that I wrote to Judge Trott earlier in the day. That's a pretty standard practice. Okay. We'll hear from you. Thank you. You have used your time. May it please the Court, Garrett Beaumont for appellee. Appellant argued that the trial court, when making its findings, did not focus on Tolbert, but rather focused on Investigator Joseph. And that's not the case if you read the trial court's remarks and decision. It specifically focused on Tolbert himself and said, in his opinion, Tolbert meant for the communication to be public and didn't have any particular intent that it not be seen by the courtroom at large. I think he pointed out that Tolbert reasonably could know that the investigator would see it in plain view. If a newspaper reporter had been walking around, he could have seen it in plain view. You said Tolbert meant for it to be seen? He said Tolbert should have known that it would be seen and that he inferred Tolbert's conduct or lack of any attempt to either turn over to the page or hide it or move it or anything else indicated that there wasn't any. When he was finding Tolbert waived the attorney-client privilege, he was saying, I think that Tolbert didn't particularly care if anybody saw it. Well, you said you used the word meant. You said there was a finding that Tolbert meant for people to see it. That would suggest that I'm putting it over here. I mean for you to see this. I didn't see anything where anybody found he meant for people to see it. I'm overstating that. He didn't get into Tolbert's head and say Tolbert meant for that to be seen by the public. You're ready to snatch defeat from the jaws of victory, but go ahead. Keep talking. I think what he made, he made the finding that... He didn't say he meant for people to see it. Well, he said that while he credited the attorney insofar as the attorney was saying, I asked Tolbert to communicate with me in writing, he also made the finding that Tolbert waived that privilege by the way he conducted himself in court. I agree with that. I just didn't see anything where he meant for people to see it. Correct. I got the impression from the appellant's brief as well as from the appellant's argument that it's just inconceivable that Tolbert meant this as anything but a confidential communication. That's just not the case. Just by his own conduct. He knew that people might see it because he wrote it right up there. Correct. But it wasn't his purpose that other people would see it. It wasn't his purpose that they not see it. He wasn't trying to hide it. He wasn't trying to keep it confidential. He wasn't trying to keep it privileged, and he wasn't trying to maintain a Sixth Amendment attorney-client privilege when he wrote that note. And he didn't expect anyone to come snooping around to read it either. He certainly didn't expect there to be a... He knew that... He didn't expect a detective to come around and read it. He knew the investigator was right next to him and the investigator didn't move. The investigator stood up, is what he did. And I assume, I think it's a reasonable assumption to make, that Tolbert would have expected that at some point in the day the investigator would stand up. He wouldn't have been seated. Well, he didn't know there was going to be another trial. Well... Go ahead. I'll submit it unless there are any further questions. Any further questions? Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Pregerson, Trott